Can the attorneys on Daley v. Ingalls approach the podium and identify yourselves for the record, please? Good morning, your honors. Karen DeGrande for the defendant of Howland Ingalls Memorial Hospital. Good morning, Ms. DeGrande. Did you want to reserve some time for rebuttal? Yes, please, your honors. It's going to be a 20-minute argument. I just reread the rules, so I'm very versed on a 20-minute argument. How long do you want to reserve? Five minutes, please. Great. Thank you, Ms. DeGrande. Good morning, your honors. I'm Bruce Paff. I represent the plaintiff. Good morning, Mr. Paff. Okay, Ms. DeGrande, you can begin. Again, good morning, your honors. Karen DeGrande for the defendant, Ingalls Memorial Hospital. We are the appellant today. May it please the court, counsel. We're before the court on an issue requiring the interpretation of a federal statute, the Patient Safety and Quality Improvement Act. Congress designed this 2005 legislation to create a new national health care paradigm. It focuses on information sharing to improve patient safety and to elevate the quality of medical care across the country. This legislation relies as its core principle on voluntary reporting like that done here and an analysis of patient events. Mr. DeGrande, did the trial court, was a basis of one of their findings for this, that this information was all obtained prior to the peer review process? That's one of the comments that the court made, your honor, yes. And is there anything in the statute which would negate that? My interpretation in the Patient Safety Act, yes, I think so, your honor. My interpretation of what the trial court was getting at by making that comment was a determination that the case law in Illinois, and she referred to the case law but not by name, that pertained to asserting the Medical Studies Act privilege as opposed to the Patient Safety Act was what was before the court. So it was conflating the standards that you need for the medical studies with the safety? I'm sorry, your honor, I didn't mean to interrupt. No, your honor. That is my impression and I think the transcript bears out that conclusion from what the court was stating. Because at the time of the argument on the motion to compel at the time of the proceedings before the court, the counselor for Ingalls stated to the court, you know, the court said, well, this is, I'm not upholding this on a Medical Studies Act privilege, but then counselor addressed the Patient Safety Act. And then the court went back and said, but under the recent case law interpreting peer review, this happened before the peer review committee or the peer review process got started. And would these documents, the same documents that were used for the Patient Safety Act, also be used in the peer review? They were not. Completely different. They were not. There was not a peer review. These documents were not used in peer review from the standpoint of an internal at Ingalls peer review. These documents, and it's borne out, I think, quite clearly by the two affidavits in the record of the Associate General Counsel for Ingalls, that these documents were prepared and solely prepared for purposes of submitting to the Clarity PSO and for the purpose of providing this information. And they were provided. The documents were provided. We're down to actually three documents after the initial objections and so forth were sort of sorted out. So I think it's very important, and I won't, you know, belabor this, because I know the Court's very aware of it, but this is not an issue of interpretation of the Medical Studies Act. When you first responded to the motion to compel, though, that's how it was all initiated. Was it not you didn't answer something and then there was a motion to compel? That's correct. No. But when you did respond, did you cite both the Safety Act and the Medical Studies Act? Or did you cite one and then later the other? We did. The way the record bears all of this out is when the discovery initially was responded to, there were objections and then there was a privileged log that itemized these documents that referred both to the Medical Studies Act and to the Patient Safety Act. And the Medical Studies Act issue, as is borne out by Ms. Conway's affidavit, became a non-issue and was effectively withdrawn as an objection because it simply factually wasn't an issue here. So the initial assertion of that objection was essentially withdrawn, and then by the time that we proceeded on our motion to reconsider before the Court, our objection was stated under the Patient Safety Act. So, you know, in the big picture, and again I won't belabor it, but the concept is that if health care providers will participate by reporting patient events that are perhaps unexpected in the ordinary course, human error can be avoided, patient safety is enhanced. But health care provider participation is critical. And I think that comes across very clearly in the language of the Act as well as in the final rule and the other documents that address the Congress' intent. Ingalls' conduct in assembling and submitting a PSO report, really it's the opposite of plaintiff's characterization. The characterization of the plaintiff is that Ingalls is trying to hide information. It's the opposite. And Ingalls is sharing information by participating in this federal system and is one of the, I don't know how many. Can I just get some clarification on this? Yes, certainly, Your Honor. These are, you know, we've got the documents obviously under seal. These are things you go on a portal and you fill it out on a computer? Correct. Okay, the company you outsource this to, I can't remember their name. Creative PSO. Sure, okay. And you fill something out. And presumably you would have to, whoever's filling it out has to gather information first. Obviously there's information here that they didn't just spontaneously know. They had to either gather materials or perhaps also talk to people, interview people. That can be part of it. Okay. And outside of this portal when you're doing all these sort of investigations, you do these peer reviews and you have those same interviews, right? I mean, you're going to talk to those same people who were involved in the alleged negligence. They're going to be interviewed. They're going to be writing things down, aren't they? It depends on the situation, Your Honor. But there can be conversations where people can be part of it. Okay. And, you know, again, we don't have the issue that appears under the Medical Studies Act, which so frequently has arisen in the past several years of was there a committee convened to address a specific issue before there was any type of investigation and so forth. That's not how the Patient Safety Act works and it's not how the privilege works here. It's broader. And you're not suggesting that the information obtained, if it were used in another context, would be privileged? It's only privileged insofar as it appears on this portal, in these documents? Well, once the documents are assembled for this purpose, developed, put together, put into the portal, it goes to the PSO, it's within the Patient Safety Evaluation System. Those documents are privileged. Let me just make sure I understand this. So you're the person assigned to fill out this form and you say, I need to talk to Nurse Jones. So you go in and talk to Nurse Jones. You write down some notes. Nurse Jones is telling you this and this. Maybe Nurse Jones has something to even hand you. You take those things. You fill it out in the portal. You've also got these freestanding documents. Do those also get handed over to the portal? Are those covered under this? I think they are covered because it's information that's assembled for purposes of submitting to the PSO. The medical records of the appointment. The medical records were not. What if the nurse handed over discharge instructions? Discharge instructions. And I think that's what it is. That's right. And it's one of the exceptions. But I just want to test your theory here of exactly how far can we push this patient safety act. Right. And that's what I've been thinking about too, Your Honor. Even though I have to, I will say, and I will attempt as best I can to answer any hypothetical that the court wants to pose, because I know you'd have to write an opinion here. But we're narrow here. We've got, we do have sort of a narrow fact set. And, of course, I can't describe it, because otherwise that would defeat the purpose of asserting the privilege. But so if there, if there, and there's a very interesting and very comprehensive discussion. I think perhaps the court's already looked at it. It's a long opinion out of the Kentucky Appellate Court in the University of Kentucky v. Bonnell case. And, you know, and the court goes into those issues. So I think arguably there is a privilege to be asserted there. Okay. So as part of the scheme that Congress came up with, as part of this overall goal of increasing patient safety, the Congress recognized that, first of all, we're not going to get anywhere if we just, and this is the contrast with internal review in a hospital. A hospital can probably do a lot of very fine things with an internal review, but there's no way that a single hospital could provide any single institution, even if it weren't a hospital, the quantity of data that's needed to achieve this concept of putting the information together, saying here are trends, here are problems, here's a way to rectify those problems. And so, and for that reason, Ingalls embraced this opportunity. But Congress did recognize that no hospital, no provider would be willing to expose him, her, or it to the risk of liability inherent in this kind of self-reporting unless there was a predictable privilege. That has to be in place and it has to be upheld. The idea is to promote robust data gathering without blame. And that's, you know, somewhat, it's a little bit of a different concept than what we're doing when we have a case like this. Did the plaintiff argue that in this case that all three exceptions are apparent here and that this information should be tended because the exceptions apply? Well, the plaintiff made an argument on appeal. There was no argument made in the trial court on those points, Your Honor. But the plaintiff argued that under that subparagraph B, that clarification section. So are you saying that the argument is forfeited because it wasn't raised? No, I'm just clarifying. So the first exception is that, you know, the medical records must contain a minimum of certain things, right? That's not what the exception says. Your Honor, what does the exception say? The exception, and I have to go back to my note to make sure that I don't misstate it. The exception is that, and this is under sub B of the clarification section, that information that is privileged under the preceding subparagraph does not include a patient's medical record, billing and discharge information, or any other original patient or provider record. So if we certainly What are medical records then? We're talking about a big clump. What do medical records, how would you define that? It would be all of the medical record that's maintained by Ingalls pursuant to their requirements and the requirements under the Act. Doesn't the Administrative Code define what medical records are? The Administrative Code defines, yes, has specific items that are to be included in a medical record. But I don't see anywhere in this that Would that umbrella then cover the first exception, what the Administrative Code says medical records are? I don't think that's what it said, no. It doesn't, I don't think, it doesn't say, and there was no finding by the trial court either, that there is some deficiency in the medical records. The trial court, what the trial court said, and I think that's I guess my question is if these are, if what's in the materials that you don't want to have disclosed, if they contain what would normally be considered medical records, wouldn't the exception then apply? That's not the language of the statute, Judge. Read it to me again. The statute says information described in some paragraph A does not include a patient's medical record. It doesn't make a broader issue for purposes of this privilege as to whether there should be sort of a judgment made as to whether there's information that could or might or should be contained in the medical record. That's not what it says. And it seems to me that the way, there's two flaws in what the plaintiff's arguing. I think it's broadening that information beyond, broadening that language beyond what it says. But there was no finding by the trial court that there was a deficiency in the medical records. What the trial court said was, the trial court looked at the pages of these four reports that were tendered to the court. One set aside and said that's nothing, don't worry about that. No need to produce. One actually doesn't even pertain to the incident that's discussed in the plaintiff's complaint. And then looked at these, but said some of that information should be reproduced. And then also said, well, you've got to tell me. I think the plaintiff is entitled to information that's contained in these reports unless you have disclosed it. Unless it's in a medical record or it's been disclosed in discovery. And I think that's really the opposite of what the act says. What the act says is, you know, you can't have, you can't take the medical records and send them off to the PSO and then say, sorry, you don't get the medical records. The plaintiff has the medical records here. I mean, we're not talking about, this is a limited assertion here. We're talking about a couple of documents among the thousands of pages of medical records that have been produced. Two sets of interrogatories, two sets of notice produced, many documents produced. Discovery has proceeded. Ms. Gilmore, the daughter of the plaintiff's decedent, testified. Dr. Guano, who was the respondent in discovery, testified. So this isn't a matter of, we're trying to thwart discovery. We're trying to stop, in the words of the Supreme Court in Jenkins v. Wu, we're trying to stop you from using the tools of discovery. No, that's not what's happening here. We're saying, we are participating in this effort, this national effort, to say, okay, well, let's think about this and let's send it off and let's get analyzed. Let's have this information analyzed. And that's, this is not a, you know, this is an occurrence that Engels encourages its employees to undertake. And, you know, the problem here is if we have a standard that is the standard that was discussed or applied by the trial court, there isn't a hospital in the state of Illinois that would do this anymore. Because the ruling was, you show me where that information has been disclosed. Otherwise, you're turning it over. Well, then, is that something where we would possibly say that we're remanding this because the standard used was incorrect? I think this Court can apply this right standard. I don't think it needs to be remanded, Your Honor. And I think the Court was, you know, and the plaintiff declined in the trial court to, you know, there was no request for discovery pertaining to these issues.    I don't think it's necessary to say that the standard was used. And what about the unrebutted affidavit that was made in this case? Obviously, that helps you. There is no counter affidavit. There's no counter affidavit. There's speculation. There's nothing else. Well, there is a statement, though, that appears to be uncontradicted, that the information in the documents was assembled, developed, and prepared for a purpose other than reporting. That's correct. That's correct. And there was no, nothing to suggest. But let me ask you this. How does a plaintiff counter that kind of affidavit? I mean, how do they really? Or how would they? Well, you know, I think if it, you know, perhaps there would be, and I'm not going to do Mr. Payoff's work for me. I don't expect you to. He doesn't need me, I promise. But, you know. You can ask him that. Well, and there was no effort made to do that. There could be questions asked. Was there an effort to depose the plaintiff? No. No, there was not, Your Honor. And that issue actually came up very briefly. I think it was at the February 7 hearing in the motion to reconsider. And there was sort of a brief reference by plaintiff's counsel to, well, I don't know. Maybe there's, maybe there will be a deposition or something like that. And the court said, nobody's asked for a deposition here. Is the Walgreens case the only case that's interpreted this so far? In Illinois. In Illinois. Yeah. I mean, you cited the outage. Right. Right. In that case, they felt the affidavit that was not contradicted was significant and actually probably impacted the decision. I think it did impact the decision. And I think what the IDPH came up with was there was an attempt to counter it by going and looking at documents that were produced by Walgreens in another case and to sort of call into question whether these medical records, the medical prescription error reports were actually used for another purpose. And the court looked at that information and said, these documents don't prove what you're saying they prove. But there was an effort to do it in that case. Patient safety work product, very clear with the statute. I think the statute is unambiguous. I think this clarification section of the statute is unambiguous. It says if the information that is within the subparagraph B, sure, you can have that, because it wasn't developed, it was developed outside of the patient safety evaluation system. So these are different. Medical records are different. And that's how discovery has proceeded in this case. And as Justice McBride points out, Ms. Conway's affidavits are unrebutted on this record. So I think the court, I think, you know, in fairness to the trial court, this is sort of a new issue in Illinois. But it is a different issue than the Medical Studies Act. And, again, I have to emphasize that without this court and other courts, federal and state courts, and, of course, this is an interpretation of federal law, so we're also looking at what the federal courts had to say about this, and we cited cases, district court cases, but we cited some cases. There's no circuit case that I am aware of have interpreted this and applied this. So with these uncontested affidavits, I don't believe that there's anywhere else to go for the plaintiff. The health care adverse event reporting law that was raised in plaintiff's response, that law has not been implemented. There is no way to report anything. And, again, I go back to Ms. Conway's affidavit. There was no reporting done under that act. And so that was one of the suggestions in the appellate court, that maybe that law suggests that these documents were prepared for another purpose. But the affidavit says no, and there's nothing in that. It's not implemented by the Department of Public Health in Illinois yet, so there's nowhere to go with that. We've talked about the case law, and also what are we asking this court to do? We're not asking for a remand. We're asking for the court to decide that the privilege applies. It's very clear on the record. It's clear under the law. And the court has the documents and can see, based on Ms. Conway's affidavit, that they're privileged. We've also have asked the court to vacate the contempt finding, which I think is appropriate. Judge Johnson made very clear that she had no interest in penalizing. I believe you're going into custody. Okay. All right. Very good. And if I can answer any questions at this time, any additional questions at this time? Very good. Thank you very much, Your Honors. Mr. Paff. May it please the Court, Counsel. I'd like to, first of all, address the clarification portion of the statute, subsection B. This looks like a statute prepared by parties on both sides who reached a compromise, and that's what the Federal Register says. It is a compromise bill. Information described in subparagraph A, which defines the work product, does not include information collected, maintained, or developed separately or exists separately from a patient safety evaluation system. We did not depose the affiant because the affiant had nothing to offer as to what the source of these reports were. We don't know who wrote the reports. We don't know the source of the information. We don't know from whom or where those data or that information was collected from. That is a failure on the part of the defendant to meet its burden to establish the facts necessary to prove the privilege. So is your argument that the privilege log was incomplete? Well, not the log was incomplete. The log identified the documents. The affidavits are inadequate to establish the privilege. Ms. Conway, with due respect, didn't prepare these reports. Ms. Conway didn't produce a report or an affidavit of anyone who did prepare the reports. Ms. Conway and no one else provided information as to what the sources were. So we can't say that the information wasn't collected separately or that it doesn't exist separately because the person who would know is the author of the reports. The record is silent. The defendants did not choose to bring that person's affidavit to the court's attention. But we had the benefit of having the actual records. The trial court had the benefit of having the actual records. Could we not look at them and make our own determination? Well, I find that to be an interesting problem because it sort of gets outside the adversarial system. One can see whose name might be on the report, but I don't know, for example, what role that person had. And I would think that if someone was trying to create a record to establish a privilege, it would have an affidavit. So if there were a meaningful affidavit in this case about who did the reports and perhaps what they looked at, that might have been worth taking that person's deposition, taking the deposition of an assistant general counsel who had no information in her affidavit about what the sources were. Where did they collect this information? Wasn't that yours to do in the trial court? They gave you the opportunity to do discovery and take a deposition, and you chose not to. So couldn't you have gotten all of this information that you say is lacking from the affidavit by doing a deposition? If it were our burden to establish the privilege, certainly we would have done so. It's their burden to establish all facts necessary to prove the privilege. That's Cox v. Yellow Cab. Did you move to strike the affidavit as lacking personal knowledge? Did not. But the objection was made that this isn't enough. This isn't enough to establish the privilege. These arguments you're making now were made in the trial court. Well, you say yes. The point of it is if the defendants wished to establish that the information was not collected separately, was not maintained separately, did not exist separately from this evaluation system, they could have done so. They chose not to. Their choice. The problem that we have, I have the benefit of at least knowing what the trial court thought. The trial court felt that there was personal health information and conversations with now-decedent's family members about the events that took place in the hospital. So you're aware of it? Only from what the trial court said on the record. So I think then at least that's open, that what is contained in these in some way relates to conversations with family members? That's part of what the trial court said. And she also said personal health information. And I believe that's why when counsel was arguing that the court used a conflated MSA in this act, I think no. I think the trial court understood there are two different standards, but the court was saying if you were taking information that looks like it's from a medical record, but you're telling me it's not from a medical record, that was collected separately. That gets part of this exception in the clarification part of the bill. If this information actually was, according to the attorney, you know, Now you have some information that might involve conversations with family members. And I assume those conversations have to do with talking to somebody else, right? Okay. Well, I mean, the conversation includes, well, I mean, whatever. You do. I'm not trying to, you know, get out any of the information. I appreciate that. But is this, knowing that, that there's a conversation with a family member, isn't that something that you will be able to divine from all sorts of methods, including, you know, general discovery? Well, for example, we And every single hospital person that's involved in any way, shape, or form, won't you be able to get that information via a deposition? It's been four years since our client died. It's been three years since this lawsuit was filed. Discovery has been stayed for a year and a half. All right. But a lot of that has to do with we're here. We're here. I understand that, but And it's not unusual for cases to take eight years to go to trial over in that daily cycle, as I recall. It is. All right. Things have changed, Judge, for the better. I'm glad to report. Well. But realistically, health care providers, and the Itler brief speaks to this, health care providers aren't going to remember things that happened four years ago. They're certainly not going to remember things that helped the plaintiff four years ago. I don't mean to be cynical, but that's his experience talking. Yeah. So we're not going to find that information unless it's documented somewhere. I take the view that what the Congress was trying to do was to say, we're going to set up this separate system for new information to be reported. And if it's in that new information that gets reported to Clarity or whomever, fine, that's privileged. But anything that's not new information, it exists separately, it was collected separately, it's maintained separately, that's not part of the privilege for a good reason, because that should be discoverable and produced. Let me just Give us an example of what you think would be privileged. Let's, of what would be privileged? Yeah. Under the act the way you're interpreting it. For example, if the hospital did an analysis and said, we discovered that the nurse did not use, did not test for blood because she didn't know how. And our conclusion is, you know, she just didn't know how to do her job. That's someone's assessment based on their background, et cetera. For example, if you look at, I think it's subsection 2 of part A of the act, anything that talks about someone's process of making conclusions about the health care is privileged. The conclusions they're entitled to. We want the facts. That's all we're looking for, and that's what Judge Johnson saw, was personal health information conversations that probably existed separately. But if we see, like, the process, having the documents in front of us, then that's something you believe would be privileged, as opposed to the facts that you're describing. Exactly. If there is an analysis done of those facts. Well, what about the facts themselves? I mean, you're not going to have that analysis in a vacuum. You're going to interview people. You're going to talk to that nurse who forgot to check for blood. You're going to maybe talk to the nurse's supervisor. You may say, write it down for me. Tell me everything that happened in your own words. Here's a pen, here's a paper. Write it down. And then you have a piece of paper. Correct. Is the paper privileged? It depends where that started. That piece of paper may have started when that nurse got home at night and realized a terrible thing happened, and he or she took notes down. That's not privileged. But I don't think anybody is saying that would be privileged, are they? That's not what I'm understanding. What I'm understanding is that when they begin an investigation, they say, okay, we've got this patient safety thing to do, so let's go interview some people. It depends on who starts that investigation, which is why I think the defendant actually wasn't being completely candid with the court on the Medical Studies Act. If you look at the record, page C173, they maintain that these reports were prepared as part of the peer review process and they were claiming the Medical Studies Act as part of that. Well, under the federal law, those aren't protected by federal statute if they were prepared for some other process. So then the defendant, as the case has gone forward, says, okay, well, we're withdrawing the Medical Studies Act claim. But they've already said on the record the documents were prepared as part of the peer review process. Those things are not protected by the federal law. A defendant, this federal business that goes on with Clarity and the other companies, that's a whole separate branch of privilege. And something has to be created for that to be privileged under it. How do we get around Walgreens? Well, Walgreens, the plaintiff and the party in Walgreens, they had a report as soon as they knew of a misfill, they automatically filled it in in their STAR system. That was the only place it was reported and that information was automatically sent on to the PSO. We have no basis to know in this record that's what happened here. And I think the opposite is true because we know from what the court said there were conversations and personal health information. Now, if there's personal health information that wasn't reported in the medical record, it should have been. The Illinois Administrative Code says the medical record has to be accurate and complete. And to the extent that someone's reporting things that aren't in the medical record in one of these reports, I suspect it was collected separately. We don't know. But that's the problem with the affidavit here. We don't have any basis to know who prepared it, what information they collected. It may well be ñ It was collected separately then? Is it privileged? No, it's not. That's part of the clarification. Let me give a hypothetical based on this case. We claim that the nurse at midnight and 5 a.m. should have run a blood glucose meter, should have done the test on her client. Let's just say there's a record that biotechnology has that says the meter was broken. We assessed the meter afterwards and the nurse couldn't use it. Well, that's a record that's a separate record. It may be part of this report. That would be hugely important, wouldn't it, in a case like this? We're entitled to that separate record because that information was collected separately. You might not be able to get it insofar as it was included in the PSO, the materials gathered to do this patient safety reporting, but that doesn't mean if it exists separately you can't find that out through normal discovery, find out, well, who was it who made this blood thing, let's subpoena them, and boom, you've got the document, right? It's not even patient safety work product, though, because that information was collected separately. It's not collected by the person who is actually writing the report, and that's why it's so critical for all of these cases, and unfortunately I'm sure we'll see more, for the person who prepared the report to prepare an affidavit to identify where the information was collected and to defeat the clarification clause. Who prepared the affidavit in the Walgreens case? I can't answer that, Your Honor. Okay, so you don't know if it was an attorney for the company or not? I don't know the answer. All right. So, counsel, if the person charged at Ingalls with putting together this portal information were to go, like a plaintiff's lawyer could do, would go to the person who manufactures this blood machine, and they said, oh, yeah, you know, it was broken, we have a report that says that, and you take that for the PSO, you're saying that that would not be privileged? I mean, it's otherwise discoverable by a plaintiff just through basic discovery. In your hypothetical, if the person charged with doing the patient safety evaluation gets that information, they derive that information, I think it's probably within the scope of the privilege in sub A. But if the information exists outside of the patient safety information system or the patient safety evaluation, it fits within sub B because the record already exists. So what sub B talks about is information collected separately, so separately from the system. So if a person putting together this portal information gets any preexisting document, it is not privileged? Exactly. If a document is created pursuant to the request from this person, it is privileged? Probably yes, although it's a fine point. It is a very fine point. It's a very fine point. So the person who's generating, who's actually going on to the safety zone portal and generating it, if she goes out, does an investigation, and takes some notes in order to do her form on the portal, that's covered? I believe it probably is. But the information to the extent that it exists separately or is collected separately from the system, and this would be any medical record, this would be any document that is in existence before the person is sitting there at the portal doing his or her work. That is not covered. And we don't know of any of the few things that Judge Johnson compelled, whether those specific things were collected separately or not. With conversations that we spoke of earlier with family members, is that something that you think would normally be part of a medical record? Often they are. When they describe perhaps history that they're aware of or something? But if it's completely separate from that sort of idea, I mean it is difficult to describe what I'm talking about. You're arguing in a vacuum. Well, I know defense counsel before Judge Johnson said, well, many of the things that you've circled are not in the medical records, and that would certainly, I assume, include conversations with family members. I don't know that. But I think it's the key thing to me are it is Engel's burden to establish all the facts necessary. I think that Judge Johnson made a careful review. She didn't confuse the legal standard. I think she knew both standards. Documents created before peer review are obviously not privileged, so she threw that out. And then she felt that there was not a foundation to say if things are personal medical information, they're not in the chart. Defense counsel says they're not in the chart. Those should be turned over. I think that's perfectly appropriate for Her Honor to have ruled that way. And, frankly, I would differ with my colleague on the burden of proof. I think they have to show that the court's decision below was against the manifest way of the evidence. The affidavit was insufficient to establish all elements of the privilege. Mr. Papp, what do you say to the counsel's argument that the court, the judge, sort of summarized it as, well, if this information isn't contained in the medical records, it should be disclosed. Didn't she kind of like sum it up that way? She did. Well, that's not the test, is it? No, I understand that. But the information, though, is that there was no showing that this information was put in there by the person at the portal writing the information. We don't know where the information was collected. And my assumption is the court believed that personal health information must have come from a medical provider. How it got to the portal person, we don't know. I'm assuming the person sitting at the portal is not one of my clients, doctors or nurses. So somehow personal health information gets to the portal. It probably existed separately. I can't say that. But counsel hasn't rebutted that. And it's their burden to say it didn't exist separately, it wasn't collected separately. And they chose not to address that in their affidavit. Well, our review of it indicates that it wasn't, it was collected separately. Mm-hmm. Then what? Well, then it fits within sub B and it should be produced. The clarification makes it clear if it's collected separately, it's got to be produced. But if it wasn't collected separately, then the privilege applies. Well, then subsection B may not apply. It still has to fit within A to show it's part of a patient safety work product. So it is a compromised bit of legislation. It's probably not the best drafted thing in the world. I agree with counsel. It's not ambiguous. The court simply needs to apply it. And it's a matter of did they meet their burden of showing that those items circled by Judge Johnson are, in fact, privileged. They haven't negated the clarification section of the act. That's their burden. And they haven't done it. So I think the information should be produced. Thank you, Mr. Grant. Thank you for your attention, Your Honor. Mr. Grant? I'm going to try to briefly answer some of the questions that were raised. I'm a Walgreens affidavit. I don't know how you're going to do that briefly. I'll speed talk. I'm a Walgreens affidavit, Your Honor. I was trying to listen and read at the same time. But I don't think that it says who prepared it necessarily. But the affidavit was signed by Suzanne Hansen, who was vice president of pharmacy services for Walgreens. And, you know, we're talking about a hospital here. We're talking about a corporation in that case. And there hasn't been any mention of a problem with foundation for this affidavit until now that we're talking about it here in the appellate court. Those issues could have been raised. And they weren't raised. And, yes, I think we do have a burden of coming forward and establishing the privilege. But I think we did that, and there was no question about this affidavit. And there was no question about the foundation for the affidavit. So I don't think that that's a legitimate basis for the court to deny the relief that Ingalls is asking for. On the standard of review, I believe it is. We've cited some competing cases, and I believe that it is a de novo standard. But I think we went under either standard. So I think oftentimes in these privilege issues, there's sort of some mixing of the standard. But I think it's clear here what the standard is and that it applies to these documents, no matter which standard the court applies. Personal health or medical information, that's a broad term. And that is not the language of the privilege section of the Act. So I think, you know, in an effort to try and mine something from the court's comments about, you know, and to reach the conclusion that there's something wrong with the medical records, that phrase is being kicked around. But that's not what the Act says. So I don't think that that particularly is supportive of the plaintiff's position here. You have the burden to establish the privilege. Who has the burden to establish an exception? Or is that still yours? Well, I think that's a clarification. Maybe exception is a little bit of a misnomer, because if you fall within subsection A and within the definition of work product under subsection A, you're necessarily not going to fall within subsection B. And I think subsection B says, okay, they're clarifying it. I don't know that there's some other burden that needs to be met. Counsel mentioned that conversations often are part of the medical record, which frankly reminds me that, you know, once again, and also I think particularly with Justice Ellis' questions, that, you know, we're not stopping discovery here. There was no reference in the brief to discovery being halted. There was no stopping of discovery until the court decided that we could proceed up here by agreeing to enter the order on the friendly content finding. And at that point she did state discovery, but it wasn't stated before that. And there was discovery that was taken. And if there is information that is otherwise discoverable, that is, as counsel agrees, because he's reading the same statute that I'm reading, that is collected, maintained, or developed separately, that can be discovered by the plaintiff, potentially, unless there's some other privilege that applies. So you're working at Ingalls, and your job is to gather this patient safety data for federal compliance, and you're dealing with Clarity or whatever their name is, and you contact the maker of the blood machine. I'm sure there's a better term than blood machine, but let's go with that. I prefer that. And so if you said, hey, you know, let me know if something was wrong or not, and he sends you an email saying, yeah, it was broken that day, if that email was generated in response to your request pursuant to this federal reporting, your position would be that email is privileged. It is, I think. I think the purpose is what's driving the analysis here. Okay. If you then considered it as such, and you won that argument in court, in the trial court, but then the plaintiff, doing their due diligence, subpoenaed the company, would they be able to get that document that way? Or would you be able to come in with a motion for a protective order of some kind, saying, no, no, there's one email, they don't get to see, Judge? Well, I think there's an argument to be made that it would be protected, Your Honor. I'll call it a glucose meter. Okay. Are you saying that if that glucose meter was broken, that that wouldn't be something that would absolutely be included in a medical record somewhere? I'm not making a statement to that effect, no. Okay. But I mean, would you say that if some kind of a, any kind of equipment is malfunctioning, at some point, I would think that that's got to be in the record somewhere, unless it was actually hidden, shall we say. Well, here's what my response is to that. There's nothing in this act that says, if you, hospital, have done something wrong, in terms of you didn't put something in the medical record, and there's nothing here that suggests that, as I read the record. There's no penalty provision in this act. There's no provision that says, you know what, your privilege is gone then. You did something wrong, so we're not going, so they're talking about the medical records. They're not talking about the aspirational medical records. So you might get in trouble with somebody. You might get in trouble with a licensing body, or I don't know who all. But that's not an exception, and it's not a part of the qualification. So if the court doesn't have any further questions, we ask for the relief that's in our briefs. Thank you. Thank you very much, Your Honors. The court will take the matter under advisement and issue an order as soon as possible.